[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. Nature of the Proceedings:
In a two count Amended Complaint dated December 12, 1994, the plaintiff, in the First Count sues on a promissory note dated January 1, 1991 and in the Second Count sues in tort claiming a fraudulent misrepresentation. The case was tried to the court on September 15, 1995, where the defendant admitted the allegations contained in the First Count but denied the allegations of fraudulent misrepresentation contained in the Second Count.
II. Facts
Prior to January, 1990 the defendant, Steven Stein, retained the plaintiff, Attorney Joseph Eremita, to represent him and his ex-wife in the purchase of real property in Bloomfield, Connecticut. The interior of the premises was not finished at the time of the inspection made just prior to closing and Attorney Richard Lafferty accompanied Mrs. Stein through the premises on said inspection.
At the closing of the house purchase, the defendant delivered a check to Attorney Richard Lafferty, who was handling the closing for the plaintiff who had been called out of town due to an illness in his family.
The check that the defendant presented to Attorney Lafferty was a personal check for $14,324.27 dated January 23, 1990 made payable to Joseph Eremita, Trustee and was delivered in payment of the balance due the seller on the purchase price of the house. The check when deposited to the plaintiff's client fund account was returned for the reason that it had been drawn against insufficient funds. It was redeposited and returned again for the same reason.
The plaintiff deposited $14,324.27 plus the bank's charges of his own money to his client's fund account to cover the CT Page 12500 overdrafts created by the return of the defendant's check.
On January 21, 1991 the defendant and his wife entered into a promissory note secured by a mortgage deed on the house they had purchased and delivered the same to the plaintiff to pay for losses he had incurred since covering the defendant's check approximately one year earlier.
After making payments of $2,065.15 the defendant defaulted on the note and has made no further payments since October 22, 1991. The note contains provisions for interest at 12% per annum, late charges of 10% for payments not received within 15 days of the date due and costs of collection including a reasonable attorney's fee.
The defendant testified that he called the mortgage department of the bank from which he was getting a mortgage loan for the purchase of the premises and asked an employee in the mortgage department if he had sufficient money in his personal checking account to write a check for the balance due on the purchase price of the premises and all of the related expenses that he was going to be required to pay at the closing.
Although Mrs. Stein testified that she knew nothing about her husband's finances nor anything about the balance or the deposits or checks written on the subject checking account, both she and the defendant assert that the employee in the mortgage department assured them that there was, in fact, enough money in the defendant's checking account to write a check for the money required to satisfy all of the defendant's obligations at the closing even though they had not been told how much to bring in the first place.
Based upon the representation of the employee of the mortgage department the defendant wrote out a personal check for $14,324.27 and presented it to Attorney Lafferty at the closing. The defendant admits that he did not keep a running balance on his account and never checked the balance of the checking account either by examination of his check book register or by contacting that department of the bank responsible for servicing inquiries regarding checking account balances to determine if the check would be covered.
The defendant admits that he informed Attorney Lafferty that the bank "verified" for him that there were sufficient funds in CT Page 12501 his account to cover the check he was presenting.
Attorney Lafferty testified that in reliance on the defendant's representation, the fact that the defendant was a friend of the plaintiff and the fact that he was a doctor, he accepted the personal check for deposit to the plaintiff's client's fund account and proceeded to consummate the closing.
At the time that the check was presented for payment the defendant had only $9,567.54 in his account according to his bank statement. At no time during the month of January 1990 did the defendant ever have sufficient funds in his account to cover the check that he presented at the closing. The defendant made no effort to make good the check or any portion of it from January 23, 1990 to January 21, 1991 when he executed the promissory note to the plaintiff.
II. Discussion:
A. First Count:
At trial, the defendant did not question the allegations contained in the First Count of the plaintiff's amended complaint. From the documents and testimonial evidence presented, this court finds that there is due from the defendant to the plaintiff on the First Count the sum of $31,084.31 arrived at as follows:
 $15,489.69 unpaid principal balance 6,985.44 interest to August 31, 1995 320.67 interest from September 1, 1995 through November 2, 1995 (63 days at $5.09/day) 1,190.51 late charges 7,098.00 attorney's fees per Affidavit of attorney's ---------- fees dated October 6, 1985 which this court has reviewed and finds reasonable $31,084.31
B. Second Count:
In the Second Count of the amended complaint, the plaintiff alleges that the defendant misrepresented his financial condition to the plaintiff in order to induce the plaintiff to lend him the money. It is further alleged that the plaintiff CT Page 12502 relied upon the defendant's representations and that the defendant obtained the loan from the plaintiff by means of fraud.
The issue before the court is not whether the loan was obtained by fraud as it was given to evidence and secure a debt already in existence between the plaintiff and the defendant but whether the defendant misrepresented his financial condition when he gave his personal check payable to plaintiff to Attorney Lafferty at the closing. From the pleadings, proof, oral argument, trial brief dated September 15, 1995 and Plaintiff's Reply Brief dated October 6, 1995, the court is unable to determine whether the plaintiff is proceeding under the tort theory of fraudulent misrepresentation or the tort theory of negligent misrepresentation in the second count and as such will address both in this memorandum.
1. Fraudulent misrepresentation:
The essential elements of a claim for fraudulent misrepresentation are: "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act to his injury." Miller v. Appleby, 183 Conn. 51, 54-5, 438 1.2d 811 (1981); Clark v. Haggard, 141 Conn. 668, 673, 109 A.2d 358 (1954) (holding that a buyer can recover for fraudulent misrepresentation in the sale of real estate).
Fraud is to be proven by clear and satisfactory evidence.Miller v. Appleby, supra, 55; J. Frederick Scholes Agency v.Mitchell, 191 Conn. 358 (1983) (stating that the standard of proof for fraud "has been formulated as `clear and satisfactory evidence' and as `clear, precise and unequivocal evidence.'")
Applying these elements to the evidence presented at trial this court is not satisfied that the plaintiff has established by clear and convincing evidence or by clear and satisfactory evidence that the false representation was untrue and known to be untrue by the defendant at the time that he made it. The court finds credible and credits the defendant's testimony that he was not told to bring a bank or certified check to the closing, that he did not know the "bottom line" figures required to close because the house was not completed and no mention of the closing costs was made to him by Attorney Lafferty. CT Page 12503
There is no question in the court's opinion that the plaintiff was ill served by Attorney Lafferty and the court finds unpersuasive his testimony that he told either the defendant or his wife to bring a certified check or bank check in an amount certain to the closing.
From the evidence, the court concludes that the defendant did not intend to deceive the plaintiff but relied on the representation by the mortgage department that he had sufficient funds to cover the check. Accordingly, this court concludes that the plaintiff's cause of action for fraudulent misrepresentation must fail.
2. Negligent misrepresentation:
Connecticut has "long recognized liability for negligent misrepresentation." Williams Ford, Inc. v. Hartford Courant Co.,232 Conn. 559, 575, ___ A.2d ___ (1995). Claims for negligent misrepresentation have been brought in actions involving real estate transactions, see, e.g., McClintock v. Rivard, 219 Conn. 417,593 A.2d 1375 (1991); Terremar, Inc. v. Ginsburg Ginsberg,6 CSCR 438, 439 (April 5, 1991, Dorsey, J.) (holding that an attorney can be held liable to a third party for negligent misrepresentations contained in a title opinion letter, where the third party is a foreseeable beneficiary of the opinion letter); and actions involving employment disputes, see, e.g., D'Ulisse-Cupov. Board of Directors of Notre Dame High School, 202 Conn. 206,219-20, 520 A.2d 217 (1987) (recognizing a cause of action for negligent misrepresentation when an employer fails to "exercise reasonable care in making representations to an employee on which the employee relied to his detriment.").
The elements of a cause of action for negligent misrepresentation are summarized in D'Ulisse-Cupo v. Board ofDirectors of Notre Dame High School, supra, 202 Conn. 206. The court stated that "`[o]ne who, in the course of his business, profession or employment . . .[1] supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'" Id., 217-18, quoting restatement (Second), Torts § 552 (1979).
The plaintiff is not required to plead the precise language CT Page 12504 of the Restatement to establish a claim for negligent misrepresentation, so long as the facts alleged fairly apprise the defendant of the plaintiff's intent to pursue the claim.D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,
supra, 202 Conn. 219-220 (holding that the plaintiff's allegation "`[t]he defendants negligently misrepresented the facts to the plaintiff, causing her damages as pled,'" sufficiently stated a cause of action for negligent misrepresentation.). Where a claimant alleges that the defendant negligently misrepresented facts, there is an implication that the defendant did not exercise reasonable care or competence in obtaining or communicating the information. Id., 220; Ginsburg v. Krass Jacobson, Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. 537724 (April 27, 1995, Hale, S.T.R.); Skierkowski v. Creative Graphics Services, Inc., Superior Court, Judicial District of Hartford/New Britain at New Britain, Docket No. 463242S (May 5, 1995, Handy, J.). Nonetheless, "actionable representation(s) or statement(s) must be made or conveyed in the setting of a proven lack of reasonable care by the maker." Center Court Associates Limited Partnershipv. Maitland/Strauss Behr, Superior Court, Judicial District of New Haven at New Haven, Docket No. 252381 (May 4, 1994, Healey, S.T.R.).
"The test of negligent misrepresentation involves the breach of a duty to exercise reasonable care in communicating information upon which another may reasonably be expected to rely in conducting their affairs. Under this principle one making a representation or communication to such another person, may even believe [the] representation or communication to be true, but because of his lack of reasonable care in making that representation or communication it is in fact false. . . . The ultimate test of the existence of a duty to use care is found in the foreseeability that the harm may result if it is not exercised. . . . [T]he test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipated that harm of the general nature of that suffered was likely to result?'" Id., quoting Coburn v. Lenox Homes, Inc.,173 Conn. 567, 575-76, 378 A.2d 599 (1977).
The plaintiff is required to allege, however, that the representation contained false information, D'Ulisse-Cupo v.Board of Directors of Notre Dame High School, supra, 202 Conn. 218, and that the plaintiff relied thereon, Williams Ford, Inc.v. Hartford Courant Co., supra, 232 Conn. 579-80. "[F]ailure to CT Page 12505 establish either requirement of this theory of action defeats it." Paris v. Northeast Savings, Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. 398144 (June 1, 1994, Corradino, J.). "[T]he plaintiff need not prove that the representations made by the defendant[s] were promissory." D'Ulisse-Cupo v. Board of Directors of Notre DameHigh School, supra, 218.
In establishing that the defendant supplied false information, the plaintiff must present evidence that the defendant "made a representation to the plaintiff that was untrue or should have been known to be untrue." Barry v. Posi-SealInternational, Inc., 36 Conn. App. 1, 21, ___ A.2d ___ (1994);Barbuto v. William Backus Hospital, Superior Court, Judicial District of New London at Norwich, Docket No. 105452 (April 13, 1995, Hendel, J.) (granting defendant's motion to strike on the ground that the plaintiff failed to allege that, at the time the statements were made, the defendant knew, should have known, or had facts available to it indicating that the statements were untrue.); but see Skierkowski v. Creative Graphics Services,Inc., Superior Court, Judicial District of Hartford/New Britain at New Britain, Docket No. 463242S (May 5, 1995, Handy, J.) (denying motion to strike on the ground that, although the plaintiff did not specifically state that the representations were false, the allegations, when taken together and construed most favorably to the pleader, created such an inference.). Furthermore, "[a]n actionable misrepresentation, whether made knowingly, recklessly, negligently or innocently, must be made for the purpose of inducing action upon it." J. Frederick ScholesAgency v. Mitchell, 191 Conn. 353, 359, 464 A.2d 759 (1983).
No special relationship must exist between the parties to assert a claim of negligent misrepresentation. In Williams Ford, the court rejected the argument that liability for negligent misrepresentation should not exist between sophisticated commercial parties with full access to information concerning business transactions. Williams Ford, Inc. v. Hartford CourantCo., supra, 232 Conn. 577-78. In addition, the court rejected the argument that the tort is limited to those persons in the business of selling information. Id., 576. Referring to the language of the Restatement, the court stated that "[p]roviding information in the course of one's business is plainly more expansive than selling information as the purpose of one's business." Id. In addition, privity is not required to bring a claim of negligent misrepresentation. Shawmut Bank Connecticut v.CT Page 12506Deloitte Touche, Superior Court, Judicial District of Hartford/New Britain at New Britain, Docket No. 462508 (April 25, 1995, Handy, J.); see also Terremar, Inc. v. Ginsburg Ginsberg, supra, 6 CSCR 438.
A remedy for negligent misrepresentation is considered to be independent of a remedy on a contract. Williams Ford, Inc. v.Hartford Courant Co., supra, 232 Conn. 579. Thus, a defendant who is not liable for representations based on promissory estoppel can, nonetheless, be liable in tort for negligent misrepresentation. D'Ulisse-Cupo v. Board of Directors of NotreDame High School, supra 202 Conn. 218-19. Accordingly, a claim of negligent misrepresentation, based on statements made during the course of a contractual relationship, may be brought even though purely economic losses are alleged. Williams Ford, Inc. v.Hartford Courant Co., supra, 579.
A claim of negligent misrepresentation may be based on a defendant's failure to speak when he has a duty to do so.DePasquale v. Day, Berry Howard, 9 CSCR 550, 551 (March 31 1994, Berger, J.); but see Set to Fit Realty v. First StamfordCorp. , Superior Court, Judicial District of Stamford/Norwalk at Stamford, Docket No. 112612 (August 18, 1994, Lewis, J.) (holding that the defendant's failure to disclose that it was an agent was not a misrepresentation and, therefore, the defendant was entitled to summary judgment.
"Whether evidence supports a claim of fraudulent or negligent misrepresentation is a question of fact." McClintock v. Rivard, supra 219 Conn. 427.
An allegation of negligent misrepresentation requires proof by a preponderance of the evidence. Rego v. Connecticut InsurancePlacement Facility, 22 Conn. App. 428, 430, 577 A.2d 1105 (1990), rev'd on other grounds, 219 Conn. 339, 593 A.2d 491 (1991)[2]; see Calabro v. Calabro, 33 Conn. App. 842, 846, 639 A.2d 1046
(1994) (quoting a jury interrogatory which asked whether the plaintiff had proven its allegation of negligent misrepresentation by a fair preponderance of the evidence.).
In an action to recover for breach of contract and negligent misrepresentation in the sale of certain real estate, one court stated that "[t]he damages recoverable for negligent misrepresentation are those necessary to compensate the plaintiff for the monetary loss to him of which the misrepresentation is a CT Page 12507 legal cause including (a) the difference between the value of what he has received in the transaction and the purchase price or other value given for the property, and (b) the pecuniary loss suffered as a consequence of the plaintiff's reliance upon the misrepresentation." Foley v. Huntington Co., Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 246145 (March 16, 1994, Fuller, J.), citing Restatement of Trots, (Second) § 552(B). "However, the damages recoverable for negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant." Id.
"Depending upon the underlying facts, a plaintiff who can prove negligent misrepresentation may also be entitled to recover for the same conduct under CUTPA." Id., citing Hinchliffe v.American Motors Corp. , 192 Conn. 252, 470 A.2d 1216 (1984).
A similar cause of action to negligent misrepresentation is innocent misrepresentation. "[A]n innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth." WilliamsFord, Inc. v. Hartford Courant Co., supra, 232 Conn. 575;D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra, 202 Conn. 217; Richard v. A. Waldman Sons, Inc.,155 Conn. 343, 346, 232 A.2d 307 (1967).
In the instant case the defendant misrepresented his financial condition by representing to Attorney Lafferty at the time of the closing that his bank had "verified" for him that the check he was presenting to pay for the balance due on purchase price, was good. The representation at issue is not whether he checked with his bank but whether the check was good.
Regardless of whether or not he had been so informed, by the mortgage department of the bank, in fact, there were not sufficient funds in the account to cover the check thereby rendering the representation false. The bank had no duty to determine the defendant's bank balance and in fact could not have represented that a certain check would be good when presented for payment without calculating the effect of outstanding deposits and checks on the existing bank balance. The duty to know ones bank balance is the duty of the one responsible for drawing checks on the account.
From the evidence it is abundantly clear throughout the proceedings that the defendant has more than the requisite CT Page 12508 intelligence to understand both how to calculate his own bank balance and also to understand that the bank could not possibly have given him a reliable representation as to his balance without first taking into consideration which checks have already been paid and which were still outstanding and this could not possibly have been done by the mortgage department as the defendant testified.
Attorney Lafferty did not have a duty to perform an independent inquiry into the sufficiency of the funds in the account.
Applying those elements to the credible evidence presented the court is satisfied that the plaintiff has established by the preponderance of the evidence the causes of action for negligent representation against the defendant.
Certainly, the house purchase was a transaction in which the defendant had a pecuniary interest; the information provided by the defendant that he had an adequate bank balance to cover his personal check was false, Attorney Eremita suffered a pecuniary loss by Attorney Lafferty's, his agent, justifiable reliance upon the defendant's representation. This court further finds that the defendant failed to exercise reasonable care or competence in obtaining or communicating this information. The defendant's admission that he did not keep a running balance on his account and never checked the balance of the checking account either by examination of his checkbook register or by contacting the department of the bank responsible for servicing inquiries regarding checking account balances to determine if the check would be covered, constituted negligence. This court finds that the defendant failed to exercise reasonable care in obtaining or communicating the information that he had a balance adequate to cover the personal check. Accordingly, the defendant is liable to the plaintiff for his losses that proximately result from this failure. In the court's opinion, the damages sustained by the plaintiff in the second count are $17,162.77, arrived at as follows:
 $14,324.27 Amount of personal check — 2,065.15 payments received by plaintiff ---------- $12,259.12 + 4,903.65 Interest at statutory rate, 10% per annum, ---------- from October 22, 1991 date of last payment to October 22, 1995 or 4 years. $17,162.77 CT Page 12509
III. Conclusion:
For the reasons herein stated, judgment may enter for the plaintiff on the first count of the Amended Complaint in the amount of $31,084.31 and on the second count of the Amended Complaint in the tort of negligent Misrepresentation in the amount of $17,162.77.
The judgments entered herein are not cumulative to each other and, accordingly, the total judgment entered in favor of the plaintiff and against the defendant is $31,084.31 together with such costs as may be taxed by the clerk's office.
ARENA, J.